## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TAMARA WILSON, *et al.*,<br><br>　　　*Plaintiffs,*<br><br>*v.*<br><br>CITY OF ATLANTA, *et al.*,<br><br>　　　*Defendants.* | CIVIL ACTION FILE NO.<br>1:24-cv-246-MHC |

## DEFENDANTS CITY OF ATLANTA AND CHIEF SCHIERBAUM'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants City of Atlanta (the "City") and Chief Darin Schierbaum, named in both his individual and official capacities, submit this Brief in Support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## **INTRODUCTION**

This case arises out of Johnny Hollman's death, which occurred during an arrest by Atlanta Police Department Officer Kiran Kimbrough in August 2023. Plaintiffs are the administrator of Mr. Hollman's estate and his surviving spouse. Plaintiffs have sued the City, Chief Schierbaum, and Kimbrough—alleging that they are liable for Mr. Hollman's death under 42 U.S.C. § 1983 and state law. Because the Complaint fails to state any claim for relief against the City or Chief Schierbaum, it should be dismissed as to these Defendants.

Across the Complaint's 290 paragraphs, Plaintiffs never specifically mention how Chief Schierbaum is personally liable to them—not *once*. The closest Plaintiffs come to such an allegation, falls apart after a moment of critical reflection: Chief Schierbaum must have approved of Mr. Hollman's death, they say, because when Chief Schierbaum terminated Kimbrough for the incident Schierbaum failed to cite an obscure section of Georgia's traffic code when announcing the termination. [Doc. 1 ¶¶ 209–210]. That failure, they contend, shows Chief Schierbaum supposedly "ratified" the alleged unconstitutional conduct of Kimbrough. Fortunately, that sort of headlines-grabbing allegation does not withstand scrutiny under Rule 12(b)(6).

The Complaint's legal theories against the City fare no better. Right out of the gate, Plaintiffs lodge a state-law claim against the City that is premised on a basic misunderstanding of state law: Count I conflates the circumstances in which a municipality's sovereign immunity may be waived with the circumstances in which an individual's official immunity may be defeated. Plaintiffs go on to allege a couple of § 1983 claims against the City under *Monell* and its progeny. Yet, even those claims are belied by Plaintiffs' own factual allegations in the Complaint. And the exact same allegations were raised and rejected in a different matter against the City before this Court.

The City and Chief Schierbaum's Motion to Dismiss should be GRANTED.

## LEGAL STANDARDS

***Fed. R. Civ. P. 12(b)(6)***. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint must contain sufficient

factual material, accepted as true, such that it states a claim "'that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires factual allegations specific enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are entitled to a presumption of truth, courts must disregard legal conclusions, generic labels, and unadorned recitations of the elements of a cause of action. *See Iqbal*, 556 U.S. at 678–79.

Furthermore, the Court can consider documentary evidence outside the four-corners of the complaint without converting the motion into one for summary judgment, so long as the document has been incorporated by reference into the complaint or the document is properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Baker v. City of Madison,* 67 F.4th 1268, 1276 (11th Cir. 2023) (analyzing incorporation-by-reference doctrine); *Pozdol v. City of Miami*, 996 F.Supp.2d 1290, 1299 (S.D. Fla. 2014) (taking judicial notice of DOJ report); *Sweeting v. City of Atlanta,* No. 1:22-cv-03185-JPB, 2023 WL 4672243, at *3 (N.D. Ga. July 20, 2023) (taking judicial notice of municipal code provision).

***Qualified Immunity***. When qualified immunity is raised, whether at the pleadings stage or elsewhere, a defendant bears the initial burden of

showing that he or she was acting within his or her discretionary authority. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once that showing is made, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Gates v. Khokar*, 884 F.3d 1290, 1297 (11th Cir. 2018).

## STATEMENT OF THE CASE

### I. Procedural Background

***The Parties.*** On January 18, 2024, Plaintiffs Tamara Wilson and Betty Morris filed this lawsuit. Wilson is the administrator of Johnny Hollman's estate, and Morris is Mr. Hollman's surviving spouse. [Doc. 1 ¶¶ 2-3]. Defendants are the City of Atlanta, Darin Schierbaum, and Kimbrough. Schierbaum is the Atlanta Police Department Chief of Police, and he is (at least according to the case caption) sued in his official and individual capacity. [*Id.* ¶¶ 5, 9-10]. Kimbrough was an Atlanta Police Department officer at the time of this incident. [*Id.* ¶ 10].

***The Claims.*** Plaintiffs allege the following claims in the Complaint:

| | |
|---|---|
| Count 1: | Negligence (against the City) (paras. 138-78) |
| Count 2: | § 1983 - Excessive Force (against Kimbrough) (paras. 179-83) |
| Count 3: | § 1983 First Amendment Retaliation (against Kimbrough) (paras. 184-206) |
| Count 4: | § 1983 *Monell* Claim (against the City) (paras. 207-28) |
| Count 5: | § 1983 *Monell* Claim (against the City) (paras. 229-66) |
| Count 6: | § 1983 Deliberate Indifference to Medical Needs (against Kimbrough) (paras. 267-77) |
| Count 7: | Wrongful Death (against all Defendants) (para. 278) |

4

Count 8:      Estate Claim (against all Defendants) (para. 279)

Count 9:      Assault and Battery (against Kimbrough) (paras. 280-84)

Count 10:     False Imprisonment/False Arrest (against Kimbrough) (paras. 285-87)

Count 11:     Punitive Damages (against the individual defendants) (paras. 288-91)

Count 12:     Attorney's Fees (paras. 292-93)

Each defendant waived service, and the deadline for Defendants' responsive pleadings was extended to April 23, 2024. [Docs. 17-19, 21].

## II.   Factual Background

***Mr. Hollman's Arrest***. On August 10, 2023, Mr. Hollman was involved in a motor vehicle accident. [Doc. 1 ¶ 17]. Kimbrough responded to the accident, and he determined that Mr. Hollman was at fault. [*Id*. ¶¶ 24, 26]. Kimbrough wrote Mr. Hollman a ticket, but Mr. Hollman refused to sign the ticket, maintaining that the accident was not his fault. [*Id*. ¶¶ 26-29]. Kimbrough told Mr. Hollman that he would be arrested if he did not sign the ticket, and Mr. Hollman requested that Kimbrough call a supervisor. [*Id*. ¶¶ 34-35]. As Kimbrough began to arrest Mr. Hollman, he agreed to sign the ticket. [*Id*.¶ 41].

To effect the arrest, Plaintiffs allege Kimbrough took Mr. Hollman to the ground, struck him in the head, and tased him. [*Id*. ¶¶ 44, 46, 50]. At one point, a tow truck driver, who was present because of the motor vehicle accident, assisted with the arrest so that Kimbrough could handcuff Mr. Hollman. [*Id*. ¶ 70]. Mr. Hollman then became unresponsive, and EMS was called to the scene. Mr. Hollman died at the hospital later that night. [*Id*. ¶¶ 81-82].

***The City's Response.*** In the aftermath of the incident, the City terminated Kimbrough's employment as an APD officer. [*Id*. ¶ 87]. The City also reviewed its policies regarding situations when a driver refuses to sign a

citation and amended them. [*Id*. ¶ 89]. As Plaintiffs point out, an officer's actions on what to do when a driver refuses to sign a traffic ticket are governed by O.C.G.A. § 40-13-2.1(a). [*Id*. ¶ 207]. That code section requires the ticketing-officer to inform a driver that signing the citation is not an admission of guilt. If the driver still refuses to sign the citation, the officer may arrest the driver.[1] The City's amended policy, as explained below, now forbids arrests—notwithstanding that the statute authorizes them—for a refusal to sign a ticket.

***The Arrest Policy.*** Plaintiffs allege that the City enacted a facially unconstitutional arrest policy. Prior to this incident the City's operative policy tracked O.C.G.A. § 40-13-2.1(a) nearly verbatim. [Ex. A, APD Standard Operating Procedure ("SOP") 4010 at 6]. SOP 4010 was enacted on September 7, 2021, after it was approved by Chief Schierbaum's predecessor. Regarding drivers who refused to sign citations, the SOP provided that:

> [t]he officer will have the violator sign the citation to only acknowledge receipt of citation and awareness of the court date. If the violator refused to sign the citation, the officer will inform the traffic violator that signing the citation is not an admission of guilt

---

[1] In its entirety, O.C.G.A. § 40-13-2.1(a) states:

> A person who is issued a citation . . . shall sign the citation to acknowledge receipt of the citation and of his or her obligation to appear for trial. The officer shall advise the person that the citation is not an admission of guilt and that the failure to sign will result in the person having to post a cash bond. If the person refuses to sign the citation, it shall constitute reasonable cause to believe that the person will not appear at trial and the officer may bring the person before a judicial officer or traffic violations bureau to post a bond as is otherwise provided by law.

and that failure to sign may result in physical arrest requiring them to post a cash bond to ensure appearance in court (O.C.G.A. § 40-13-2.1). A physical arrest for refusal to sign a citation must be approved by an on-scene supervisor.

[*Id.* at 6-7].

Thus, SOP 4010 (then in effect) followed Georgia law, and it certainly did not instruct all APD officers to arrest drivers who merely questioned a citation, as Plaintiffs assert. Arrests were only permitted when a supervising officer was present and after the driver had been informed that signing the citation was not an admission of guilt. [*Id.* at 6].[2]

**The City's Alleged Unconstitutional Customs**. Plaintiffs also allege that the City implemented two unconstitutional customs. First, they allege there was a custom, or widespread pattern and practice, of excessive force by Atlanta Police Department officers. Second, they allege that the Atlanta Police Department has a custom of conducting cursory investigations into use of force incidents and covering up instances of excessive force. [*See generally* Doc. 1 ¶¶ 207-66].

To show that such customs exist, Plaintiffs identify nine incidents in the last 20 years in which APD officers allegedly used excessive force that the City

---

[2] Despite not being attached to the Complaint, the Court may consider SOP 4010 at this stage for two reasons. First, the Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). SOP 4010 is properly subject to judicial notice. Second, the SOP has been incorporated into the Complaint by reference. The SOP was referenced in Plaintiffs' Complaint as the "Arrest Policy," [Doc. 1 ¶¶ 215-219], it is central to the Plaintiffs' *Monell* claims, and its authenticity is not disputed. *Hi-Tech Pharmaceuticals, Inc. v. HBS International Corp.*, 910 F. 3d 1186, 1189 (11th Cir. 2018).

failed to adequately investigate. [*Id.* ¶ 258]. Only two of the incidents identified by Plaintiffs occurred this decade, and both of them occurred in 2020. [*Id.*]. Moreover, none of them occurred during Chief Schierbaum's tenure. [*Id.* ¶ 230]. And no, the Court does not have de-ja-vu: Plaintiffs' Complaint cites the exact same prior instances that were recently relied on to support identical *Monell* claims against the City by a different plaintiff in a separate case before this Court. *See Jackson v. City of Atlanta*, No. 1:21-cv-2578-MHC, 2022 WL 4089823, at *15 (N.D. Ga. Aug. 18, 2022). The Court dismissed those *Monell* claims then, and it should do the same now.

## ARGUMENT

## I.   All claims against Chief Schierbaum should be dismissed.

As noted above, Plaintiffs sued Chief Schierbaum in his official capacity as Chief of Police for the Atlanta Police Department. [Doc. 1 ¶ 9]. They also purport to sue him in his individual capacity, as well—though it is not clear from the Complaint's actual allegations that they intended to do so. Regardless of the nomenclature, all claims against Chief Schierbaum should be dismissed.

### A.   The official-capacity claims are redundant.

All claims against Chief Schierbaum in his official capacity should be dismissed as redundant of Plaintiffs' claims against the City. A suit against an officer in the officer's official capacity is simply another way of pleading a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *accord Roberts v. Cuthpert*, 317 Ga. 645, 648 (2023) ("[S]tyling a claim against a county officer in his official capacity is simply a way of pleading a claim against the county itself."). Because Plaintiffs have sued the City for the same

claims that they purport to assert against Chief Schierbaum in his official capacity, the official-capacity claims should be dismissed as redundant. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming dismissal after explaining, "there no longer exists a need to bring official-capacity actions against local government officials"); *Higdon v. Fulton County*, 746 F.App'x 796, 799 (11th Cir. 2018) ("Thus, official-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant."); *Kinlocke v. Benton*, 257 F.Supp.3d 1368, 1377 (N.D. Ga. 2017).

**B.   No count in the Complaint is specifically directed at Chief Schierbaum's individual liability.**

Although Plaintiffs name Chief Schierbaum as a defendant in his individual capacity, none of the claims in the Complaint are actually directed toward him for personal liability. Supervisors are not liable under § 1983 for the acts of their subordinates based on vicarious liability. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014). Rather, "to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* at 1048-49. This is an "extremely rigorous" standard. *Id.* at 1048 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). Furthermore, when the supervisor did not directly participate in the alleged unconstitutional conduct, the supervisor can only be liable for instituting an unconstitutional policy or for deliberate indifference to "a flagrant, persistent pattern of violations." *Gobert v. Lee Couty*, 510 F.3d 1312, 1332 (11th Cir. 2007).

Here, there is no independent count for relief in the Complaint that differentiates between the City's liability and Chief Schierbaum's personal liability. Plaintiffs, perhaps, could have arguably asserted a supervisory liability claim against Chief Schierbaum based on similar theories pleaded against the City. But Plaintiffs did not do so. Moreover, as explained below, Chief Schierbaum could not be liable for the implementation of the "Arrest Policy" anyway because the actual policy was not facially unconstitutional. And as further explained below, Plaintiffs have not properly alleged that there was a pattern of constitutional violations, so Chief Schierbaum could not be liable for his failure to remedy the supposed unconstitutional customs. But again, Plaintiffs do not allege a separate count (or counts) for supervisory liability claims against Chief Schierbaum.

The Court should not excuse this as a pleading error and go out of its way and liberally construe the Complaint as potentially asserting such claims. Plaintiffs are represented by sophisticated counsel, and the Complaint spans nearly 300 paragraphs. This is no slip-shod *pro se* pleading. *Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983) (explaining courts will not treat represented parties like pro se parties). Thus, the Court should not construe the Complaint as asserting any individual-capacity claims, or it should simply dismiss any such purported claims under a straightforward application of *Twombly*/*Iqbal* and Rule 10(c). *See* Fed. R. Civ. P. 10(c) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . *must* be stated *in a separate count*." (emphasis added)).

10

**C.   Plaintiffs fail to overcome Chief Schierbaum's immunity under federal and state law.**

Another telling reason why the Complaint should not be construed as asserting claims against Chief Schierbaum for personal liability: Plaintiffs make no effort in the Complaint of overcoming Chief Schierbaum's immunity under federal (or state) law. For all claims against Chief Schierbaum in his individual capacity, such as they are, he would be entitled to qualified immunity under federal law for any § 1983 claims, and he would be entitled to official immunity under state law for any state law claims. *See generally*, *Gates*, 884 F.3d at 1296, 1304. Plaintiffs should recognize this, since they go to great lengths in the Complaint explaining why Kimbrough is not entitled to such immunities for the individual-capacity claims against him. [*See* Doc. 1 ¶¶104–37, 180–83].

If the Court determines to construe the Complaint as actually alleging individual-capacity claims against Chief Schierbaum, then those claims fail on account of qualified immunity and official immunity. There is no doubt that Chief Schierbaum is entitled to those immunities. And to establish qualified immunity, and shift the burden to Plaintiffs to overcome it, Chief Schierbaum need only demonstrate that the Complaint alleges conduct that was within his discretionary authority. The Complaint clearly does. For example, the Complaint alleges that Chief Schierbaum had decision-making authority related to police functions and implemented policies relating to those functions. [*Id*. ¶¶ 212, 215]. These sort of allegations clearly invoke his discretionary authority. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2023).

11

And for purposes of official immunity, while the inquiry is similar, though distinct, Chief Schierbaum easily satisfies it here. *See Broes v. Boyce*, 629 F.Supp.3d 1324, 1338 (N.D. Ga. 2022) (explaining that official immunity, similar to qualified immunity, protects public employees "from liability for their discretionary acts unless they are done with malice or intent to injure"). Chief Schierbaum was clearly carrying out discretionary functions, and thus, he cannot be liable unless he acted with actual malice or an actual intent to injure Mr. Hollman. *See Gates*, 884 F.3d at 1304. Plaintiffs fail to allege any facts that plausibly suggest that standard is met. *See id.* at 1305 (dismissing plaintiff's state law claim because no facts plausibly pleaded actual malice).

## II.    All claims against the City should be dismissed.

In Count I, Plaintiffs assert a state law claim against the City. In Counts IV and V, Plaintiffs assert § 1983 claims under *Monell*. The state law claim is barred by sovereign immunity, and Plaintiffs do not plausibly allege a *Monell* claim. All claims against the City therefore should be dismissed.

### A.    Sovereign immunity bars Plaintiffs' negligence claim because the City was engaged in a governmental function.

Plaintiffs base their negligence claim against the City on Kimbrough's alleged violation of a ministerial duty. [*See* Doc. 1 ¶¶ 138-178]. But this conflates the sovereign immunity analysis with the official immunity analysis.

Georgia's municipalities are entitled to sovereign immunity for any damages claim, unless the General Assembly has expressly waived their immunity for the particular claim. Ga. Const. of 1983, Art. IX, § II, Para. IX; *cf.* O.C.G.A. § 36-33-1 ("[I]t is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state

and such municipal corporations shall be immune from liability for damages."). And while sovereign immunity has been waived for the performance of ministerial functions, sovereign immunity has not been waived for the performance of governmental functions. O.C.G.A. § 36-33-1(b); *City of Atlanta v. Durham*, 324 Ga. App. 563, 565 (2013).

"The determination of whether a function is governmental or ministerial in character for purposes of municipal sovereign immunity focuses broadly on the nature, purpose, and intended beneficiaries of the function performed by the municipal corporation." *City of Atlanta v. Mitcham*, 296 Ga. 576, 578 (2015). Generally, a governmental function is one that is "undertaken primarily for public benefit" while a ministerial function is one that is typically done for proprietary reasons. *Id*. But here, Plaintiffs confuse the violation of a ministerial duty with the performance of a ministerial function. *See id*. at 582 ("it is important for both courts and litigants not to confuse the term[s]"). As the Supreme Court of Georgia explained in *Mitcham*, while the word "ministerial" is used in the tests for sovereign and official immunity, the word has different meanings. "[W]hether an act performed by a municipal employee is ministerial or discretionary is not a consideration in the analysis of whether a municipality's sovereign immunity has been waived." *Id*. at 582.

Here, Plaintiffs allege that the City "is liable to the Plaintiffs for Defendant Kimbrough's neglect to perform or improper performance of ministerial duties." [Doc. 1 ¶ 138]. Plaintiffs contend that because Kimbrough violated multiple APD standard operating procedures, which Plaintiffs contend were ministerial duties, that the City may be liable for Kimbrough's

actions. [*Id.* ¶¶ 143-45]. But whether Kimbrough violated ministerial duties is irrelevant to whether the City may be liable; sovereign immunity applies, regardless. *Mitcham*, 296 Ga. at 582.

Plaintiffs have not alleged that the City was engaged in a ministerial *function* that caused Mr. Hollman's death. Nor could they. The operation of a police department and oversight of officers in the course of their duty is clearly a governmental function. *Weaver v. City of Statesboro*, 288 Ga. App. 32, 35 (2007) ("it is well established that city police officers engaged in city police work are performing a governmental function to which this waiver of a city's sovereign immunity does not apply"); *Williams v. Solomon*, 242 Ga. App. 807, 810 (2000) (stating city could not be liable even for intentional torts if officer was performing a governmental function); *Fry v. City of Atlanta,* 243 Ga. 517 (1979) (operation of a police department, including hiring and firing of officers, is a governmental function). Thus, because the operation of a police department is a governmental function, the City is entitled to sovereign immunity for the negligence claim and Count I must be dismissed.

## B. Plaintiffs do not plausibly allege a *Monell* claim.

Plaintiffs *Monell* claims in Counts IV and V fail, too. In *Monell v. N.Y. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held "that local government units could be liable under § 1983 for deprivations of federal rights," but at the same time the Court recognized an important "limitation on this liability[.]" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). "[A] municipality cannot be made liable by application of the doctrine of respondeat superior." *Id.*; *see also Iqbal*, 556 U.S. at 676 ("vicarious liability is inapplicable

to . . . § 1983 suits"). Thus, under *Monell*, a plaintiff must plead and prove the following elements: (1) that his or her constitutional rights were violated; (2) that the local government entity had a policy or custom that constituted deliberate indifference to the plaintiff's constitutional rights; and (3) that the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). These "strict limitations on municipal liability under § 1983" ensure that liability is not "based on the doctrine of respondeat superior." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

In Count IV, Plaintiffs purport to proceed under a policy-based theory of liability, while in Count V, they purport to proceed under a custom-based theory. They do not plausibly allege a *Monell* claim under either theory.

### 1.    *Count IV: Plaintiffs' policy-based theory fails for multiple reasons.*

Under *Monell*, a "policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). For liability to arise, the policy itself must be facially unconstitutional; otherwise, liability would be premised on respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 386-87 (1989); *see Am. Fed'n of Lab. & Cong. Of Indus. Organizations v. City of Miami, Fl.*, 637 F.3d 1178, 1188 (11th Cir. 2011) (noting that, because "none of the policies [were] facially unconstitutional" the policy-based claim failed); *Sewell*, 117 F.3d at 489 ("Obviously, the Town has no policy commanding its officers to barter arrests for sexual favors."); *see also McDowell*, 392 F.3d at 1291 (noting

dichotomy of analysis where "the plaintiff claims that a municipality's facially valid actions violated his constitutional rights"); *accord Edwards v. City of Balch Springs*, 70 F.4th 302, 309 (5th Cir. 2023) ("An official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct.").

Plaintiffs allege that Chief Schierbaum "implemented a facially unconstitutional arrest policy which expressly instructed all APD officers to enforce O.C.G.A. § 40-13-2.1 without individualized probable cause regardless of any particular person's conduct (the 'Arrest Policy')." [Doc. 1 at ¶ 215]. In other words, Plaintiffs allege that Chief Schierbaum enacted an official policy that directly contradicted the notice requirement of O.C.G.A. § 40-13-2.1, and that this violated the federal Constitution. [*See* Doc. 1 at ¶ 219].

But there are several things wrong with these allegations. First, Plaintiffs fail to attach the policy or specify whether it was even written and when it was officially adopted by the City. To the extent Plaintiffs are referring to SOP 4010, which governed the circumstances of the incident, the Court cannot credit Plaintiffs' allegation as to the contents of the alleged "Arrest Policy." The Court must instead construe the allegations in conjunction with SOP 4010's actual terms. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (explaining that a plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no

merit").[3] Plaintiffs do not survive Rule 12(b)(6) without providing the "specific written policy" for the court to review and consider. *D.P. v. School Bd. of Palm Beach Cnty.*, 658 F.Supp.3d 1187, 1226 (S.D. Fla. 2023); *see Casado v. Miami-Dade Cnty.*, 340 F.Supp.3d 1320, 1327 (S.D. Fla. 2018) ("In the present case, the Amended Complaint fails to identify an official policy, not simply allege that one exists . . . and thus, fails to plead sufficient facts to state a claim[.]"). Like the allegations in *Iqbal* concerning the supposed unconstitutional arrest and detention policy there, Plaintiffs allegations here are "bare assertions" which "disentitles them to the presumption of truth." 556 U.S. at 680–81.

Second, if Plaintiffs are actually referring to some unwritten "Arrest Policy" that Chief Schierbaum supposedly adopted, then they are not actually alleging a policy-based theory for which the City can be liable; they're alleging a custom-based theory. *See, e.g.*, *Goebert*, 510 F.3d at 1332 ("A custom is an *unwritten practice* that is applied consistently enough to have the same effect as a policy with the force of law." (emphasis added)); *see also Pembaur*, 475 U.S. at 481-84 (explaining this distinction); *Grech*, 335 F.3d at 1329 ("A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) *an officially promulgated* county policy; or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."). Chief Schierbaum is only delegated policy-making authority within the confines of the City's local law. *See Pembaur*, 475 U.S. at 483 ("whether an official had final policy-making authority is a question of state

---

[3] As noted above, SOP 4010 is properly before the Court either under the incorporation-by-reference doctrine or judicial notice. *See* note 2, *supra*.

law"). And while the City's code certainly delegates policy-making authority to the Chief, the City's code does so only where the Chief of Police has "executed" the policy "in writing," deposited it with "the municipal clerk," and the policy is "consistent with the terms or intent of the laws and ordinances." City of Atlanta, Code of Ordinances, § 98-26.[4]

Thus, it is oxymoronic to allege that the City can be liable under *Monell* because Chief Schierbaum has "officially adopted" an unwritten "policy" that is not only facially unconstitutional and a contravention of state law, but also beyond Chief Schierbaum's delegated authority. *See Pembaur*, 475 U.S. at 481–84 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). Chief Schierbaum lacks authority to issue unwritten policies for the police department, especially unwritten policies directly contravening "the terms or intent of the laws and ordinances" governing police. Code of Ordinances, § 98-26. Indeed, Plaintiffs concede as much, though they apparently do not recognize the effect of the concession. [Doc. 1 ¶ 214 ("Because Defendant Chief Schierbaum was not vested with any legislative or executive powers under O.C.G.A. § 40-13-2.1, he *had no authority* to establish any additional

---

[4] A copy of this provision is attached as Exhibit B. This code provision also may be found at Municode:

https://library.municode.com/ga/atlanta/codes/code_of_ordinances?nodeId=CO ORATGEVOII_CH98LAEN_ARTIIDEPO_DIV1GE_S98-26DUPOCH

This code provision is also a proper subject of judicial notice. *See Sweeting*, 2023 WL 4672243, at *3 (N.D. Ga. July 20, 2023) (taking judicial notice of this code provision).

regulations or guidelines beyond the plain language of O.C.G.A. § 40-13-2.1[.]" (emphasis added))]. Plaintiffs' theory then, to the extent it is premised on some unwritten "policy," is in reality a custom-based theory of liability, and it fails for similar reasons discussed below. *See Sweeting*, 2023 WL 4672243 at *3 ("Plaintiffs . . . do not describe the municipal policy at issue beyond a decision to arrest Sweeting in this particular instance or to conduct arrests in similar instances[.]").

Finally, even Plaintiffs' allegations as to some unwritten "policy" are belied by their own factual allegations. Plaintiffs acknowledge that Kimbrough was terminated because he "'violated standard operating procedure when he failed to have a supervisor on the scene prior to proceeding with the physical arrest," based on Mr. Hollman's refusal to sign the citation. [Doc. 1 ¶ 169 (internal citation not provided)]. That is, Plaintiffs admit that Kimbrough's termination was based on the determination that Kimbrough did not comply with SOP 4010. Section 4.5.1(12) of the SOP dictates that, "[a]fter the citation is written," the officer shall "inform the violator of the court date and time, and request that the violator sign the citation (if they refuse, refer to Section 4.3.7, #5)." [Ex. A. at 11]. Section 4.3.7, referenced there in Section 4.5.1(12), explains that "the charge does not dictate a physical arrest." Rather,

> If the violator refuses to sign the citation the officer will inform that violator that signing the citation is not an admission of guilt and that the failure to sign may result in a physical arrest requiring them to post a cash bond to ensure appearance in court (O.C.G.A. § 40-13-2.1). A physical arrest for refusal to sign a citation *must be approved* by an *on-scene supervisor*.

[*Id*. at 6 (emphasis added)].

Tellingly, APD's actual written policy—for which Plaintiffs concede Kimbrough was terminated for violating—expressly and directly contradicts Plaintiffs' conclusory allegations as to an "unwritten policy," and are therefore not entitled to any presumption of truth. *Griffin Indus., Inc.* 496 F.3d at 1206 ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").[5]

### 2. Count V: Plaintiffs' custom-based theory of liability fails for multiple reasons.

A municipality can also be liable under *Monell* "for constitutional deprivations" that are caused by an unofficial custom, "even though such a custom has not received formal approval through the body's official decision-making channels." 436 U.S. at 690. To prove the existence of a custom, however, a plaintiff must show "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Random acts or

---

[5] In a single passing allegation under Count IV, Plaintiffs also purport to invoke a ratification theory of policy-based liability. [Doc. 1 ¶ 210]. Curiously, they allege that because Chief Schierbaum did not specifically cite O.C.G.A. § 40-13-2.1 in terminating Kimbrough, the City "ratified Defendant Kimbrough's failure to comply with the notice requirements[.]" [*Id.*]. There is no support for such a theory of ratification under *Monell*. Since Plaintiffs "are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review [Officer Kimbrough's] decision and agreed with both the decision and the decision's basis before [the] [C]ourt can hold [the City] liable on a ratification theory." *Thomas ex rel. Thomas v. Roberts*¸ 261 F.3d 1160, 1174 n.12 (11th Cir. 2001), judgment vacated at 536 U.S. 953 (June 2022), opinion reinstated at 323 F.3d 950.

isolated incidents, by definition, cannot amount to a custom. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Plaintiffs allege two theories of custom-based liability. First, they allege that the City has tolerated a custom of APD failing to conduct investigations into alleged incidents of unconstitutional activity, such that APD officers believe they are permitted to violate citizens' rights with impunity. Second, they allege that the City has tolerated a custom of widespread abuse by police officers using excessive force against citizens. Neither theory is plausibly alleged in the Complaint.

### a.   Inadequate "UOF" Investigations.

The Eleventh Circuit has held that for prior incidents to give rise to a pattern, the previous incidents must be temporally proximate to the incident in question. For example, in *Khoury v. Miami-Dade Cnty. School Board*, the Eleventh Circuit held that the previous incidents relied on by the plaintiff were "too remote in time" to show a custom of a constitutional violation. 4 F.4th 1118, 1132 (11th Cir. 2021); *see also Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) (holding that incidents that "occurred a year or more" earlier were too isolated to form the basis of an unconstitutional custom).

Plaintiffs point to nine incidents since 2003 to show that there is a custom in the City of failing to investigate unconstitutional uses of force by police officers. [*Id.* ¶ 258]. But those incidents are too remote to establish a widespread practice amounting to such a custom. Only two of the prior incidents occurred in the last eight years, none of them occurred during Chief Schierbaum's tenure, and one of the more recent incidents flatly contradicts

Plaintiffs' allegation that the City does not investigate use of force. [*Id.*]. Notably, this Court has previously held that *the same allegations* of similar incidents that Plaintiffs list here are insufficient to state a *Monell* claim for failure to investigate use of force incidents.

In *Jackson v. City of Atlanta*, the plaintiff alleged that the City had a custom of failing to adequately investigate use of force incidents, and she attempted to support this claim by citing nine previous incidents. No. 1:21-cv-MHC, 2022 WL 4089823, at *15 (N.D. Ga. Aug. 18, 2022). Plaintiffs recycle seven of the same nine incidents cited in *Jackson*. Specifically, the plaintiff in *Jackson* referenced incidents that involved David Childs, Raymond Clay, Jermichael Lockette, Karla Weems, Ezoeke Parks, Bailey Cato, and Richard Williams. *Jackson v. City of Atlanta*, No. 1:21-cv-2578-MHC, Doc. 32 ¶ 146 (October 15, 2021). And in *Jackson*, this Court held those incidents did not plausibly allege a custom. 2022 WL 4089823, at *15. They were "too temporally remote" then, so these same incidents are necessarily too temporally remote now nearly two years later. *Id.*; *see also Watchulonis v. City of Atlanta*, No. 1:23-cv-2204-TCB, Doc. 38 (N.D. Ga. Dec. 13, 2023) (holding that plaintiff failed to adequately allege a *Monell* claim because, of the six prior incidents alleged, only two occurred within the last five years and only one in the past year). These "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Marys*, 787 F.2d at 1499.[6]

---

[6] Plaintiffs concede that the *Jackson* incident, one of the two incidents within the eight years preceding this incident, does not support the claim that the City has a custom of not conducting use of force investigations. [Doc. 1 ¶ 262-63]. Plaintiffs acknowledge the officers were investigated and disciplined in

### b.    Pattern and Practice of Excessive Force

Plaintiffs rely on the same nine incidents over the last 20 years (the ones copied and pasted from the *Jackson* lawsuit) to also support their claim that the City has a custom of excessive force. [*Id*. ¶¶ 258-59]. This custom-based theory should also be rejected for several reasons.

First, again, Plaintiffs' nine cited occurrences happened too long ago to form the basis of a custom. Whether Plaintiff is attempting to state a *Monell* claim based on a failure to investigate or based on a custom of excessive force, the prior similar incidents must be temporally proximate. *Khoury*, 4 F.4th at 1132. Furthermore, mere complaints or allegations of excessive force cannot, as a matter of law, put a policymaker on notice of a pattern of constitutional violations, unless the complaints are valid. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987); *Buckler v. Israel*, 680 F. App'x 831, 836 (11th Cir. 2017) (holding that lawsuits that were dismissed without admissions of liability cannot be the basis of a pattern of constitutional violations). In *Brooks*, for example, the Eleventh Circuit held that a large number of complaints regarding use of force incidents, without more context, cannot establish a custom of excessive force being used. 813 F.2d at 1193 ("[T]he number of complaints bears no relation to their validity."). Here, because Plaintiffs have not established that any of the prior instances involved unconstitutional force, they cannot be relied upon to allege a pattern of unconstitutional force.

---

*Jackson*, so the *Jackson* incident simply could not have "instilled in Atlanta Police Officers the belief that they were permitted to use force against citizens with impunity and without any consequences." [*Id*. ¶ 264].

Finally, the previous instances of excessive force were not similar to the circumstances present in Mr. Hollman's arrest. None of the prior instances concern drivers refusing to sign tickets. Rather, they appear to run the gamut of excessive force allegations, including body slams, tazings, and pistol whippings. [Doc. 1 ¶ 258]. The Eleventh Circuit has repeatedly stated that a municipality must be on "notice of a need to . . . supervise in a particular area," for liability to arise. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). "Training against generally excessive force is not specific enough under this limitation." *Griffin v. City of Atlanta*, 2022 WL 345644, at *6 (N.D. Ga. Feb. 4, 2022). These various allegations of excess force over the last 20 years therefore do not plausibly allege a custom of excess force in the City.

## III. Plaintiffs' remaining claims are derivative or not actually alleged against the City and Chief Schierbaum.

Plaintiffs do not appear to assert any other substantive claims against the City or Chief Schierbaum. Count VI states that it is alleged against "Defendants," but this count includes no express allegations against the City or Chief Schierbaum. It mentions only Kimbrough.[7] The remaining counts in the Complaint against the City and Chief Schierbaum are derivative claims, and those necessarily fail without a viable substantive claim. Thus, they must be dismissed, as well.

---

[7] Paragraph 273's reference to "one or more of Defendant City of Atlanta's employees" cannot form the basis of liability against the City or Chief Schierbaum because this allegation is seemingly couched only in vicarious liability principles, which are not applicable under § 1983.

*     *     *

Plaintiffs' Complaint does not plausibly allege any claims against the City or Chief Schierbaum. Count I conflates state law on a fundamental level. The liability theory articulated in Count IV is oxymoronic and belied by Plaintiffs' own factual allegations. And the exact same allegations lodged in Count V have previously been dismissed by this Court.

<strong><u>CONCLUSION</u></strong>

Defendants City of Atlanta and Chief Schierbaum's Motion to Dismiss should be GRANTED.

<strong><u>LOCAL RULE 7.1D CERTIFICATE</u></strong>

This submission was prepared using Century Schoolbook 13-point font with exactly double-spaced lines.

Respectfully submitted this 11th day of April, 2024.

**HALL BOOTH SMITH, PC**

*/s/ R. David Ware*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664
PEARSON K. CUNNINGHAM
Georgia Bar No. 391024
M. BLAKE WALKER
Georgia Bar No. 993236
*Attorneys for Defendants City of Atlanta and Chief Darin Schierbaum*

191 Peachtree Street, NE,
Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
dware@hallboothsmith.com
rbritt@hallboothsmith.com
pcunningham@hallboothsmith.com
bwalker@hallboothsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I certify I filed Defendants City of Atlanta and Chief Schierbaum's Brief in Support of Motion to Dismiss with the Court's CM/ECF System, which will send electronic notification to all counsel of record.

Respectfully submitted this 11th day of April, 2024.

**HALL BOOTH SMITH, PC**

*/s/ R. David Ware*
R. DAVID WARE
191 Peachtree Street, NE                  Georgia Bar No. 737756
Suite 2900                                *Attorneys for Defendants City of*
Atlanta, Georgia 30303                    *Atlanta and Chief Darin Schierbaum*
T: (404) 954-5000
F: (404) 954-5020
dware@hallboothsmith.com